[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
SUMMARY
This action involves a claim for damages under the Connecticut Product Liability Act, General Statutes § 52-572met seq. The plaintiff's one count complaint alleges that materials purchased from the defendant, which were incorporated into piping installed by the plaintiff, were defective. The plaintiff alleges that the defective materials caused the piping to fail, thereby causing the plaintiff to suffer substantial losses and damages as a result of the leakage of water that ensued. The defendant filed a motion to strike the plaintiff's complaint. The defendant's motion to strike will be granted, because the plaintiff's complaint alleges commercial loss between commercial parties, which is not recoverable under the Product Liability Act.
FACTS
The plaintiff, H. Grodsky Co., commenced this action by filing a one count complaint against the defendant, United States Pipe and Foundry Co., on February 10, 1995. The plaintiff subsequently filed a revised one count complaint on June 25, 1995. The complaint alleges that the plaintiff was engaged in the performance of a contract with the Gilbane Building Company for the installation of underground piping at a Groton, Connecticut, plant being constructed on behalf of Pfizer, Inc., and that prior to February 11, 1993, the plaintiff had purchased materials, such as pipe, sealing rings and bolts, from the defendant to be used in joining and installing such piping. The complaint further alleges that on February 11, 1993, a 24-inch chilled water line that had been installed by the plaintiff incorporating the materials purchased from the defendant failed, causing the plaintiff to suffer $46,015 in damages as a result of additional work and CT Page 970 replacement costs necessitated by a substantial leakage of water. The complaint goes on to allege that the piping failed because the materials supplied by the defendant were defective, and claims that the defendant is liable to the plaintiff under the Connecticut Product Liability Act, General Statutes § 52-572m et seq.
The defendant filed the present motion to strike the plaintiff's complaint on July 6, 1995. The plaintiff filed an objection to the motion on September 21, 1995. Pursuant to Practice Book § 155, both parties also submitted appropriate memoranda of law in support of their respective positions.
DISCUSSION
"The only remedy by which to test the sufficiency of a cause of action or defense, whether stated in one pleading, count or defense, or in a paragraph or paragraphs thereof, is a [motion to strike]." Donovan v. Davis, 85 Conn. 394, 397-98,82 A. 1025 (1912). "In ruling on a motion to strike the trial court is limited to considering the grounds specified in the motion . . . . [Unspecified grounds can] not furnish a basis for [granting the motion]." Merideth v. Police Commission,182 Conn. 138, 140-41, 438 A.2d 27 (1980). "[A] trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345,348, 576 A.2d 149 (1990). The "facts" include those "facts necessarily implied and fairly provable under the allegations . . . . [They] do not include, however, the legal conclusions or opinions stated in the complaint." S.M.S. Textile v. Brown,Jacobson, Tillinghast, Lahan King, P.C., 32 Conn. App. 786,796, 631 A.2d 340 (1993). "[The court must construe] the facts alleged in the complaint in a light most favorable to the pleader." RK Constructors, Inc. v. Fusco Corp. , 231 Conn. 381,384, 650 A.2d 153 (1994). "The sole inquiry is whether the . . . allegations, if proved, would state a [cause of action]."Doyle v. A P Realty, 36 Conn. Sup. 126, 127, 414 A.2d 204
(1980).
The defendant argues that the plaintiff's complaint fails to state a cause of action upon which relief can be granted, because the allegations therein amount to allegations of commercial loss between commercial parties, which is not recoverable under the Product Liability Act. The defendant's CT Page 971 argument is based on § 52-572m(d) of the Act, which states that "`harm' includes damages to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, `harm' does not include commercial loss." The defendant also relies on the language of § 52-527n(c) of the Act, which states:
 As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code.
The term "commercial loss" is not defined within the Product Liability Act, and its meaning under §§ 572m(d) and 572n(c) has not been definitively defined in a Connecticut Supreme or Appellate Court decision. Two different definitions of "commercial loss" have been developed by the Superior Courts of this state, one slightly broader than the other. The narrower of the two definitions states that "a `commercial loss' within meaning of the Products Liability Act has reference to loss of profits or consequential economic losses as opposed to property damage and personal injuries." (Defendant's brief, pp. 9; citing American Manufacturers MutualIns. Co. v. Harrington Hoist, Inc., Superior Court, judicial district of New Haven, at New Haven, Docket No. 26 23 69 (June 13, 1989) (Berdon, J., 4 CSCR 564)). A somewhat broader definition of "commercial loss" was adopted by the court, Burns, J., in Producto Machine Co. v. Ajax Magnethermic Corp. , Superior Court, judicial district of Fairfield, at Bridgeport, Docket No. 23 60 05 (November 10, 1987) (Burns, J., 3 CSCR 66), stating that "commercial loss" is "economic injury, whether direct, incidental, or consequential, including property damage and damage to the product itself, incurred by persons regularly engaged in business activities consisting of providing goods or services in competition." (Internal quotation marks omitted.)Producto Machine Co. v. Ajax Magnethermic Corp. , supra. The defendant argues that the plaintiff's allegations amount to a claim for "commercial loss" under either of these definitions.
Upon due consideration, this court believes that the broader definition of "commercial loss" stated in ProductoMachine Co. v. Ajax Magnethermic Corp. , supra, is the better CT Page 972 view. Further, this definition appears to be more in line with the apparent intent of § 572n(c) that disputes between commercial parties be decided under the specialized provisions of the Uniform Commercial Code.
The plaintiff in the present case has clearly alleged that both it and the defendant were commercial parties, parties regularly engaged in business activities consisting of providing goods or services in competition. (Complaint, ¶¶ 1, 2). As to the damages sought by the plaintiff, the relevant allegation in the complaint states that "[a]s a result of the water leak, damages in the form of additional work to be performed and materials to be replaced, totaling $46,015 were incurred by [the plaintiff]." (Complaint, ¶ 6). The damages that the plaintiff claims to have suffered clearly represent "commercial loss." Producto Machine Co. v. Ajax MagnethermicCorp. , supra. It follows that the plaintiff's allegations are legally insufficient to state a cause of action under the Products Liability Act, § 572m et seq. Id.
 CONCLUSION
Based on the foregoing, the defendant's motion to strike the plaintiff's complaint is granted.
Hurley, J.